UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA :
:
*versus* : CRIMINAL NO. 12-84-BAJ-DLD
:
ALEX T INC., d/b/a :
Quality Express :

**PLEA AGREEMENT**

1.

The Office of the United States Attorney for the Middle District of Louisiana, through undersigned counsel, and the above-named defendant agree that the defendant will enter pleas of guilty to an Indictment charging, in Count One, conspiracy to launder monetary instruments, in violation of Title 18, United States Code, Section 1956(h), and, in Counts Ten through Thirteen, failure to file currency transaction reports, in violation of Title 31, United States Code, Sections 5313(a) and Title 18, United States Code, Section 2. The defendant also admits and agrees to comply with the forfeiture allegation, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 31, United States Code, Section 5317(a)(1)(A).

2.

The United States Attorney and the defendant agree that, if the Court accepts the guilty pleas, no additional criminal charges related to the violations contained in the Indictment will be brought against the defendant in this district.

3.

The defendant agrees to provide the United States and the Court with a notarized resolution issued by the defendant's Board of Directors authorizing Sam Tran, President, to act on the defendant's behalf in this matter, including entering into this agreement and entering pleas of guilty to the Indictment. Said resolution shall be provided to the United States and the Court at least three business days prior to the defendant's re-arraignment.

4.

The defendant agrees to provide complete and truthful information to any law enforcement agent or attorney of the United States and at any grand jury proceeding or trial. The defendant waives the Fifth Amendment privilege against self-incrimination. This Plea Agreement, however, is not conditioned upon any obligation of the United States to receive, or act upon, information which the defendant may now or in the future provide or stand ready to provide.

5.

Except as otherwise provided herein, no truthful information provided by the defendant pursuant to this Plea Agreement, or any information derived therefrom, will be used against the defendant in any criminal trial unless the defendant breaches this Plea Agreement by failing to plead guilty to the Indictment, providing false information, failing to provide full and complete cooperation, or violating the terms of this Plea Agreement in any other manner. In the event of such a breach, any information provided by the defendant, and any information derived therefrom, may be used against the defendant in this or any other prosecution. Such information includes, but is not limited to, the Plea Agreement itself, the factual stipulation referenced in Paragraph 12 of the Plea Agreement, and any other information provided by the defendant. In addition, in the event of such a breach, the defendant may be prosecuted for any offense covered by this Plea Agreement. The defendant's pleas of guilty may not be withdrawn.

6.

The defendant agrees to fully and truthfully complete the financial statement provided to it by the Office of the United States Attorney and to return the financial statement to the undersigned Assistant United States Attorney within ten days of this agreement being filed with the Court. Further, upon request, the defendant agrees to provide the Office of the United States Attorney with any information or documentation in its possession regarding its

financial affairs and agrees to submit to a debtor's examination when requested. The defendant agrees to provide this information whenever requested until such time as any judgment or claim against it, including principal, interest, and penalties is discharged or satisfied in full. This information will be utilized to evaluate its capacity to pay the government's claim or judgment against it, whatever that claim or judgment may be. If the defendant refuses to comply with this paragraph or provides false or misleading information, it may, after a judicial finding of such, be prosecuted for any offense covered by the agreement, and all information provided by the defendant may be used against it. The defendant's pleas of guilty may not be withdrawn.

7.

The defendant hereby expressly waives the right to appeal its conviction and sentence, including any appeal right conferred by Title 18, United States Code, Section 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under Title 28, United States Code, Section 2255, and any modification of sentence pursuant to Title 18, United States Code, Section 3582(c)(2). The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum; (b) any punishment which is an upward departure pursuant to the guidelines; and (c) any punishment which is above the guidelines range calculated by the Court. Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel.

8.

The defendant understands that, as a result of this Plea Agreement, the maximum sentence that could be imposed, for each count, is five (5) years probation, a fine consisting of the greater of $500,000 or twice the gain or loss resulting from the offense. In addition, the Court must impose a special assessment of $400 per count, which the defendant agrees to pay at the time of sentencing. The Court may also order restitution in accordance with law. The defendant understands that the Court, while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing.

9.

The defendant agrees to forfeit to the United States its interests in the assets set forth in the forfeiture allegation of the Indictment, specifically including, but not limited to, the following assets seized as authorized by the warrant issued under Case No. 12-84-BAJ-DLD: (i) $220,702.82 contained in Dow Louisiana Federal Credit Union account 7000557, (ii) $116,101.05 contained in Hancock/Whitney account number 37534892, and (iii) $655,658.50 in United States currency, which funds were involved in the charged offenses. The defendant further agrees to waive all interest in any such assets in any administrative or judicial forfeiture proceeding, whether criminal, civil, state, or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that it understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise it of this, pursuant to Rule 11(b)(1)(J), at the time its guilty pleas and the admission are accepted.

10.

The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, post-conviction, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture either as (i) proceeds of illegal conduct, (ii) property facilitating illegal conduct, (iii) property involved in illegal conduct giving rise to forfeiture, or (iv) substitute assets for property otherwise subject to forfeiture.

11.

To the extent of its ownership interest in the property to be forfeited, the defendant agrees to hold the United States, its agents, and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

12.

The United States and the defendant stipulate, for purposes of Rule 11(b)(3) of the Federal Rules of Criminal Procedure and pursuant to Section 6B1.4 of the United States Sentencing Guidelines, to the following factual basis:

> At all relevant times, Alex T, Inc. and Katelyn & Claire Inc., were Louisiana corporations doing business as Quality Express. Sam Tran was the Incorporator and President of Alex T., Inc; however, Trang Dang Tran, also known as Sabrina (hereinafter Sabrina Tran), owned and controlled Alex T, Inc., as well as Katelyn & Claire Inc., both of which operated Quality Express.
>
> Quality Express was located in Baton Rouge, Louisiana, and provided three types of financial services to its customers: check cashing, currency exchanges and money transfers. As a business engaged in the transmission of funds and the exchange of currency, Quality Express was required under federal law to

file Currency Transaction Reports (CTRs) and Suspicious Activity Reports (SARs) with the Department of the Treasury.

Between March 2010 and April 2011, a cooperating source (CS), working under the supervision and at the direction of DEA and IRS-CI, federal law enforcement agencies authorized to investigate money laundering, and a Special Agent of IRS-CI, using the name A.J., provided a total of $275,000 in United States currency to agents of Alex T, Inc. and Katelyn & Claire Inc., doing business as Quality Express, including Thang Minh Tran, also known as Tommy (hereinafter Tommy Tran), Henry Chinh Tran, Sabrina Tran and Son Nguyen, also known as Tattoo (hereinafter Tattoo Nguyen), to exchange or transfer the currency so that it could be more easily concealed and avoid detection by law enforcement. CS and A.J. specifically represented the monies to be proceeds of illegal drug trafficking.

At the request of CS and A.J., Alex T, Inc., Katelyn & Clair Inc., Tommy Tran, Henry Tran, Sabrina Tran and Tattoo Nguyen (hereinafter the defendants) exchanged large quantities of small denominations of United States currency for large denominations of United States currency. In one instance, on October 19, 2010, Tommy Tran received $70,000 in United States currency from A.J. to change smaller bills into larger bills. CS and A.J. purported to be exchanging the smaller bills for larger bills so that the drug proceeds could be more easily concealed. The defendants received the currency and exchanged it at Quality Express, and, as their commission, the defendants subtracted and kept approximately one percent of the currency exchanged.

The defendants also moved large quantities of United States currency at the request of A.J. between Quality Express in Baton Rouge, and a location in Houston, Texas. On December 1, 2010, Tommy Tran and Henry Tran received $50,000 in United States currency from A.J. at Quality Express to be transferred to A.J.'s designee in Houston, Texas. A.J. represented the monies to be proceeds of illegal drug trafficking. Following the receipt of the funds from A.J., Tommy Tran made arrangements for the equivalent amount of monies to be delivered by his associate, H.N., in Houston, Texas, to an individual designated by A.J. in a manner designed to avoid detection by law enforcement. In return for transferring the monies, the defendants charged a commission of approximately three percent of the amount of currency sought to be transferred.

At the request of A.J., the defendants also arranged for funds to be transferred from Houston, Texas, to Quality Express. For example, on April 11, 2011, Sabrina Tran, at Quality Express, delivered $90,000 in United States currency, which the defendants believed were drug proceeds, to A.J. and charged a commission of approximately $2,500. Shortly before, H.N., also working at the direction of Tommy and Sabrina Tran, received currency in Houston from A.J.'s designee to be transferred to A.J. in Baton Rouge.

As a means for concealing the exchanges and transfers, the defendants used multiple bank accounts in the names of themselves and nominees. The defendants also maintained multiple business entities to conceal proceeds and facilitate their money laundering activity.

As a further means by which to conceal the currency exchanges and transfers of monies, the defendants failed to file SARs or CTRs that would have reflected the receipt from CS and A.J. of approximately $275,000 in United States currency, on six separate occasions, in amounts ranging from $12,000 to $90,000, which the defendants believed to be the proceeds of drug trafficking.

On June 1, 2012, $655,658.50 in United States currency and checks were seized from Quality Express during the execution of a search warrant. Additionally, $220,702.82 contained in Dow Louisiana Federal Credit Union account 7000557 and $116,101.05 contained in Hancock / Whitney account number 37534892, were restrained pursuant to seizure warrants executed on the same day. These funds were involved in the money laundering offenses, and were under the sole control and ownership of Sabrina Tran as owner of Katelyn & Claire Inc. and Alex T, Inc., which operated Quality Express.

The defendant understands that the Court is not bound by this stipulation.

13.

The defendant and the United States agree, pursuant to Title 18, United States Code, Section 3663(a)(3), that the Court will order full restitution from the defendant's scheme, as outlined in paragraph 12 above, in an amount to be determined by the Court. The parties specifically agree that the Court shall not be limited to the counts of conviction in determining and ordering full restitution.

14.

Pursuant to Rule 11(c)(3)(A) and 11(c)(5), Federal Rules of Criminal Procedure, the Court may accept or reject this Plea Agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the Presentence Report. If the Court rejects the Plea Agreement, the Court, on the record, will so inform the defendant and advise the defendant that the Court is not bound by the Plea Agreement. The Court will give the defendant an opportunity to withdraw the pleas and will advise the defendant that, if the

pleas are not withdrawn, the disposition of the case may be less favorable to the defendant than contemplated by the Plea Agreement.

15.

The defendant acknowledges that there is no agreement with the United States as to the actual sentence that will be imposed by the Court as a result of this Plea Agreement and acknowledges that no promises or assurances have been made to it as to what the sentence will be. The defendant acknowledges that the terms herein constitute the entire agreement and that no other promises or inducements have been made. The defendant acknowledges that it has not been threatened, intimidated, or coerced in any manner.

16.

The defendant acknowledges that this Plea Agreement has been entered into knowingly, voluntarily, and with the advice of counsel, and that it fully understands the agreement. The defendant has no objection to the legal representation it has received.

This Plea Agreement is entered into this 7th day of March, 2013, at Baton Rouge, Louisiana.

ALEX T, INC., d/b/a
Quality Express, by

SAM TRAN
PRESIDENT

LANCE C. UNGLESBY, LBN 29690
ATTORNEY FOR DEFENDANT
246 Napoleon Street
Baton Rouge, LA 70802
Telephone: (225) 387-01202
Fax: (225) 336-43552

UNITED STATES OF AMERICA, by

DONALD J. CAZAYOUX, JR., LBN 20742
UNITED STATES ATTORNEY

JENNIFER M. KLEINPETER, LBN 18329
J. LANE EWING, JR., LBN 29854
ASSISTANT U.S. ATTORNEYS
777 Florida Street, Suite 208
Baton Rouge, LA 70801
Telephone: (225) 389-0443
Fax: (225) 389-0561